**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Edward L. MIMS and Cleveland
J. McDade, Defendants–
Appellants.**

Nos. 95–2582, 95–2620.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 7, 1996.

Decided Aug. 5, 1996.

---

14. The parties shall be responsible for their respective costs.

Ranley R. Killian, Jr. (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for the U.S. in No. 95–2582.

David M. Williams, Fairfield, IL, for Edward L. Mims in No. 95–2582.

Thomas Edward Leggans, Ranley R. Killian, Jr. (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for the U.S. in No. 95–2620.

John J. O'Gara, Jr. (argued), Trentman & O'Gara, Belleville, IL, for Cleveland J. McDade and Edward L. Mims in No. 95–2620.

Before CUMMINGS, CUDAHY, and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Defendants McDade and Mims were charged with various offenses related to an alleged conspiracy to distribute cocaine. Both were convicted of conspiracy to distribute, 21 U.S.C. § 846, and possession with intent to distribute, 21 U.S.C. § 841(a)(1), cocaine base and of using or carrying a firearm during a drug trafficking offense, 18 U.S.C. § 924(c). The conviction for using or carrying was based on an incident in which Mims bartered a gun to McDade in exchange for crack cocaine. McDade was also convicted of possessing a firearm as a felon. 18 U.S.C. § 922(g). Mims was sentenced to 248 months of imprisonment, a fine of $4,500 and five years of supervised release. McDade was sentenced to 420 months of imprisonment, a fine of $7,000 and five years of supervised release.

The jury found, and the evidence in support of that finding was overwhelming, that both Mims and McDade were in the business of selling crack cocaine. The evidence also clearly showed that McDade illegally possessed the firearm. There were thus two significant areas of contention at trial: whether Mims and McDade were guilty of conspiracy, as opposed to maintaining simply a buyer-seller relationship; and whether Mims had in fact traded a gun to McDade in exchange for crack cocaine. This appeal con-

sequently focuses on issues related to the conspiracy and to the "using a firearm" offenses.

## I.  Buyer–Seller v. Conspiracy

The most persuasive argument made by the defendants on appeal concerns the adequacy of the jury instructions concerning the distinction between a conspiracy and a mere buyer-seller arrangement.  The defendants' theory of defense at trial was that, though Mims did make purchases of crack from McDade, the relationship between the two was simply that of buyer and seller for each discrete purchase and that the sales were not made pursuant to a continuing agreement.

The government presented evidence that McDade, who was originally a street dealer of crack cocaine, had become a larger scale supplier, basing his operations in a string of hotel rooms in the vicinity of "Crack Alley," an area of Carbondale, Illinois, apparently infamous for its vigorous street trade in cocaine.  Mims testified at trial that he was fundamentally a cocaine addict, who supported his habit by acting as a sort of purchasing agent for individuals who came to the Alley looking for crack but were too frightened or circumspect to leave their cars or to venture far into the Alley.  He testified that customers would approach him in the street, tell him what drugs they wanted and give him money to make the purchase.  Mims would then go and purchase drugs on the customers' behalf from any one of a number of crack houses, hotel rooms and street dealers.  According to Mims, he made little money on these deals.  Instead, he regularly shorted his purchasers, retaining a portion of the crack for his personal use.[1]  Mims testified that he had no particular arrangement or agreement with McDade, but simply purchased drugs from him whenever he was the most convenient source.  Of course, he made these purchases repeatedly—one indicator of a continuing agreement.  He further testified that he made such allegedly spot purchases from a number of different suppliers.

The government witnesses presented a different picture.  According to those witnesses, when McDade graduated from being a street dealer to more of a backroom wholesaler, Mims became his "man on the street."  One witness testified that Mims made as many as ten trips per night between Crack Alley and McDade's hotel room.  Another testified that, when he asked McDade to sell him some drugs, McDade referred him to his "worker," Mims.  Thus, the government's evidence portrayed Mims as an agent, not of purchasers he met haphazardly on the street, but of the seller, Cleveland McDade.

The difference between these two pictures may have been crucial to the conspiracy charge.  In order to prove the charged conspiracy between Mims and McDade, the government was required to prove beyond a reasonable doubt that there was an agreement between them which extended beyond the individual drug purchases.  "What is required for conspiracy in such a case is an agreement to commit some other crime beyond the crime constituted by the [sales] agreement itself. . . .  [I]nsofar as there was an agreement . . . merely on the one side to sell and on the other to buy, there was no conspiracy between them no matter what [the defendant] intended to do with the drugs after he bought them."  *United States v. Lechuga*, 994 F.2d 346, 349 (7th Cir.1993) (*en banc*), cert. denied, 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993).  Even the essentially undisputed fact that Mims was a frequent purchaser of cocaine from McDade does not necessarily compel the conclusion that he and McDade had entered into a conspiratorial agreement although it may certainly be strong evidence of an agreement.  As we noted in *Lechuga*, "[e]ven the number of sales, a factor stressed in some cases, would be significant only insofar as it cast light on the existence of a continuing relation, implying an agreement with an objective beyond a simple purchase and sale. . . .  Prolonged cooperation is neither the meaning of conspiracy nor an essential element, but it is one type of evidence of an agreement that goes beyond what is implicit in any consensual undertaking, such as a spot sale."  *Id.*

---

1.  This contention was corroborated by the testimony of an undercover officer to whom Mims twice sold quantities of cocaine which were substantially short of the requested amount.

Because of the sometimes troubling line separating conspiracy from a mere buyer-seller relationship in this type of case, the evidence presented to the jury supported an instruction on the distinction. If the jury believed the government's scenario, a conspiracy conviction certainly was in order. If the jury believed Mims' testimony or even if the jury believed that the truth about Mims' relationship with McDade lay somewhere in between the pictures drawn by the parties, it could conceivably have determined that the buyer-seller relationship which existed did not involve an overarching conspiratorial agreement.

The defendants proffered a number of instructions pertaining to the distinction between a mere buyer-seller relationship and a conspiracy. These instructions included language emphasizing the importance of proof of agreement in establishing conspiracy. One proffered instruction, for example, stated that "the relationship of buyer and seller absent any prior or contemporaneous understanding beyond the mere sales agreement does not prove a conspiracy." Mims Instruction # 2. Another stated that "[a] buyer does not automatically become a member of a conspiracy." Mims Instruction # 6. The defendants' proposed general conspiracy instruction contained language emphasizing the importance of agreements:

> The crime of conspiracy focuses on agreements. The government must prove that the defendants knew of the agreement and intended to join it.

McDade Instruction # 1; Mims Instruction # 4. The trial court rejected these proposed instructions. The defendants did not raise any objection which focused on the element of agreement. However, during discussion of the general conspiracy instruction which was eventually given, defense counsel "ask[ed] that the jury be further instructed that the crime of conspiracy focuses on agreements," Tr. Instr. Conf. at 8.

While it rejected the instructions proffered by defendants, the district court did give both a conspiracy instruction and a buyer-seller instruction. The general conspiracy instruction stated, in relevant part:

> In order to establish the offense of conspiracy to distribute and to possess with intent to distribute cocaine base, commonly known as "crack", as alleged in count 1, the government must prove each of the following elements beyond a reasonable doubt:
>
> > First: that the conspiracy alleged existed, and
> >
> > Second: that the defendant knowingly and intentionally became a member of the conspiracy.
>
> . . .
>
> A conspiracy is a combination of two or more persons to accomplish an unlawful purpose. A conspiracy may be established even if its purpose was not accomplished.
>
> In determining whether the alleged conspiracy existed, you may consider the actions and statements of all the alleged participants. The agreement may be inferred from all the circumstances and the conduct of all the alleged participants.
>
> . . .
>
> To be a member of a conspiracy, the defendant need not join at the beginning or know all the other members or the means by which the purpose was to be accomplished. The government must prove beyond a reasonable doubt, from the defendant's own acts and statements, that he was aware of the existence, common purpose and scope of the conspiracy, sought to promote its success and was a willing participant.

This instruction is correct and at one point mentions the word "agreement." However, unlike some of the language proffered by the defendants, the instruction as given does not emphasize the necessity that the jury find that there was an agreement amounting to a conspiracy. The instruction, which, as noted, mentions "agreement" in passing, defines conspiracy as simply a "combination" to accomplish an unlawful purpose.

■ The lack of emphasis on the element of agreement is very important in light of the buyer-seller instruction which was also given. Thus, the court instructed the jury:

> Mere proof of the existence of a buyer-seller relationship where the buyer does

not intend to resell the drug is not enough to convict one as a co-conspirator on a drug conspiracy charge. Proof that a defendant merely purchases drugs for personal consumption, without more, is insufficient to prove that defendant is a member of an alleged conspiracy. One who buys from a conspirator for resale is a member of the conspiracy if he knows at least its general aims.

This instruction is consistent with earlier case law in this circuit which suggested that proof of purchase of narcotics for resale would be sufficient to support a conviction for conspiracy. *See, e.g., United States v. Briscoe,* 896 F.2d 1476 (7th Cir.1990), cert. denied *sub nom. Usman v. United States,* 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). More recently, however, we have clarified the law on this subject, pointing out that, while purchase of narcotics for resale is *evidence* of a conspiratorial agreement (especially when the purchases are repeated as they were here), a buyer-seller relationship alone is insufficient to prove a conspiracy. This is the case even when the buyer intends to resell the purchased narcotics. *United States v. Townsend,* 924 F.2d 1385, 1394 (7th Cir.1991) ("The buy-sell transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction."); *Lechuga,* 994 F.2d at 349 ("Insofar as there was an agreement between [the defendants] merely on the one side to sell and on the other to buy, there was no conspiracy between them no matter what [the buyer] intended to do with the drugs after he bought them."). Given this more recent precedent, the buyer-seller instruction given here was manifestly in error.

This clearly erroneous buyer-seller instruction went to the heart of the theory of defense. The general conspiracy instruction did not emphasize the importance of a conspiratorial agreement strongly enough to neutralize the error. Thus, we can only speculate as to what the jury might have concluded about the existence of a conspiratorial agreement over and above the individual drug sales. The evidence that Mims had purchased cocaine from McDade for resale was uncontroverted. Indeed, Mims specifi-

cally admitted doing so in his trial testimony. The effect of the buyer-seller instruction was therefore to direct the jury to convict Mims and McDade for conspiracy solely on the basis of a purchase for resale, without requiring a finding of an agreement beyond the mere purchase.

■ Had defense counsel objected to the buyer-seller instruction, reversal of the conspiracy convictions would be an inescapable course. However, defense counsel failed to raise an objection adequate to satisfy Rule 30 of the Federal Rules of Criminal Procedure. That rule states:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds for the objection.

Fed.R.Cr.P. 30. No objection was raised to the buyer-seller instruction that was eventually given, nor was there a specific objection to the district court's refusal to give the defendants' requested buyer-seller instructions. The requirement of a specific objection applies equally to the court's giving or refusing to give an instruction. *United States v. Cheek,* 3 F.3d 1057, 1060–61 (7th Cir.1993), cert. denied, 510 U.S. 1112, 114 S.Ct. 1055, 127 L.Ed.2d 376 (1994). The court's refusal to give a tendered instruction does not automatically preserve an objection to the instruction actually given. *United States v. Jackson,* 569 F.2d 1003 (7th Cir. 1978), cert. denied, 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978).

■ Because Rule 30 is strictly construed, we must consider whether the giving of the erroneous buyer-seller instruction, coupled with the refusal to give the defendants' tendered buyer-seller instructions, constituted plain error. In order to constitute plain error, the error must be clear under current law and must affect substantial rights. In order to reverse a conviction for plain error, the court of appeals must determine, in its discretion, that the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano,* 507 U.S. 725, 732–36,

113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993).

Given the *en banc* ruling in *Lechuga*, there is no question that the buyer-seller instruction given in this case was erroneous and that the error was clear under then-current law. The question thus becomes whether the error was one "affecting substantial rights."

To show that an error affected substantial rights, the defendant must ordinarily show that the error "affected the outcome of the District Court proceedings." *Id.* at 734, 113 S.Ct. at 1778. In this case, however, it is impossible for anyone who did not sit in the jury room to know the extent to which the erroneous instruction prejudiced the outcome. Mims admitted that he bought cocaine from McDade, that he resold it and that he knew that McDade was in the cocaine business. These admissions alone were sufficient for a finding of guilt under the district court's buyer-seller instruction, but are not sufficient proof of "an agreement to commit some other crime beyond the crime constituted by the [sale] agreement itself." *Lechuga,* 994 F.2d at 349. The instruction given in this case allowed the jury to make a finding of guilt without determining whether the government had proved the existence of any greater conspiratorial agreement. We simply do not know whether there was *any* jury determination that there was a conspiratorial agreement.

The defendants' theory of defense rested on the distinction between overall conspiratorial agreement and the individual agreements required for each purchase. This distinction was entirely lost in the instructions that were given, even though the evidence could have supported a not-guilty verdict in accord with the defense theory.

Thus, the giving of the erroneous buyer-seller instruction affected the substantial rights of the defendants because we cannot be sure whether the jury made the factual findings of conspiratorial agreement necessary for a verdict of guilt. Though we cannot know the probability that the error changed the outcome—a properly instructed jury might, nonetheless, have determined that there was a conspiratorial agreement—we are certain that the error had a substantial potential to affect the outcome. Thus the error affected the defendants' substantial rights.

The prerequisites for reversal on grounds of plain error having been satisfied in this case, we must consider whether the error is one which "seriously affects the fairness, integrity and public reputation of judicial proceedings." This is a particularly difficult question here because the evidence was more than adequate to support a conviction for conspiracy. But, where the existence of a conspiratorial agreement was closely contested and conflicting evidence was presented on the issue, the failure to ensure a jury finding on this essential element undermined the essential fairness and integrity of the trial.[2] Thus we must reverse the conspiracy convictions.

## II. Other Issues

■ Defendants raise three other issues, which require less extensive discussion. First, the defendants argue that the rule of lenity should be applied to interpret the § 924(c) use-of-a-firearm statute so as to preclude its application to this case, in which the weapon was "at the most given . . . in barter for 'crack'." Def. Br. at 10. This argument is clearly foreclosed by *Smith v. United States,* ·508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) and warrants no further discussion.

■ Next, the defendants appeal the district court's refusal to modify two of the jury instructions to separate out references to the various counts of the indictment into separate instructions. The disputed instructions

2. This situation is in marked contrast to that in *United States v. Ross,* where this court found that "the government presented evidence sufficient to convince any rational factfinder" of the element which was missing from the jury instructions. 77 F.3d 1525, 1540 (7th Cir.1996). A few years ago the case before us might easily have gone the way of *Ross.* But, after *Townsend* and the *en banc* opinion in *Lechuga,* this is no longer the case. After *Lechuga* the evidence here would have been sufficient to uphold a jury finding that there was no agreement to support the conspiracy conviction.

were nearly identical. The instruction relating to defendant Mims stated:

> Defendant MIMS is charged in Count 1 with conspiracy to possess with intent to distribute and distribution of cocaine base, commonly known as "crack"; in Counts 3 and 4 with possession with intent to distribute cocaine base, commonly known as "crack"; and in Count 6 with using or carrying a firearm during and in relation to a drug trafficking crime. The defendant has denied that he is guilty of the charges.

This instruction does not misstate the law, nor do we agree with defendants that it could have been misleading to the jury. The district court's purpose in listing the charged offenses for each defendant in a single instruction was to avoid confusing the jury with a proliferation of instructions. Separate instructions were given describing in detail the elements of each of the charged offenses. Additionally, the court gave a specific instruction admonishing the jury that it must come to a separate finding of guilt or innocence on each count:

> You must consider each count and the evidence relating to it separate and apart from every other count. You should return a separate verdict as to each defendant and as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to that defendant under any other count.

Particularly in light of these supplementary instructions, the challenged instructions were entirely appropriate.

The defendants attempt to support their argument against the combined instructions by raising an incident which occurred during the jury's deliberations. The jury sent a note to the judge inquiring whether it could "reach a decision on six of seven counts and be hung on the seventh ... without jeopardizing the other counts." Tr. Instr. Conf. and Closing Arg. at 60–61. The judge, with the agreement of counsel for both sides, responded that he was "unable to answer [the] questions." Defendants do not suggest that this response was inappropriate, nor did they object to it at the time. In any event, there is

no reason to suspect that the jury's inquiry was prompted in any way by the inclusion of the disputed instruction. The question posed by the jury does not suggest that they believed that "all the counts are somehow interrelated." Def. Br. at 11. The jury was unsure whether failure to reach a verdict on one count would result in a mistrial as to the other counts. Possibly the district court should have clarified this issue in some way. Separating the list of counts applicable to each defendant into separate instructions would not have done so, however.

■ Finally, the defendants argue that the district court erred in refusing to give their proffered conspiracy instruction, which included a section relating to multiple conspiracies. In objecting to jury instructions a defendant must, as we have already noted, "state distinctly the matter to which he objects and the grounds of his objection." Fed. R.Crim.P. 30. Here the defendants never mentioned the multiple conspiracy issue, either in objecting to the instruction which was eventually given or in objecting to the judge's refusal to give the alternative instruction they had prepared. Thus, the lack of a multiple conspiracy instruction is reviewed for plain error only.

■ In any event, as in *United States v. Baker*, 40 F.3d 154 (7th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1383, 131 L.Ed.2d 237 (1995), there is here no suggestion that the defendants relied on a multiple conspiracy theory for their defense. A multiple conspiracy instruction is appropriate when the evidence presented at trial could tend to prove the existence of several distinct conspiracies. In defense of an indictment for a specific conspiracy, the defendant may attempt to convince the jury that, while his involvement in *some* conspiracy or other illegal conduct may be suggested by the evidence, he had no part in the charged conspiracy. Such an instruction might be important, for example, when a defendant is a low-level player in a major drug-selling enterprise and evidence has been presented at trial concerning a wide range of the enterprise's activities. The purpose of a multiple-conspiracy instruction is to "preclud[e] the jury from using evidence relating to a con-

spiracy in which [the defendants] did not participate to convict them of the conspiracy charged in the indictment." *United States v. Nava–Salazar,* 30 F.3d 788, 797 (7th Cir. 1994), cert. denied *sub nom. Casas v. United States,* —— U.S. ——, 115 S.Ct. 515, 130 L.Ed.2d 421 (1994).

In this case, however, all of the evidence presented in the case focused on the activities of the two defendants, Mims and McDade. *See United States v. Shorter,* 54 F.3d 1248, 1256–57 (7th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 250, 133 L.Ed.2d 176 (1995) ("[B]ecause [defendant] was the hub of the distribution network, harm from the lack of a multiple conspiracy instruction would be negligible at best."); *United States v. Johnson,* 32 F.3d 265, 268 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1172, 130 L.Ed.2d 1125 (1995) ("There is little, if any, need for a multiple conspiracy instruction when the defendants are at the hub of the various possible agreements."). Here, even more than in *Shorter* and *Johnson,* the evidence focused on the specific conspiracy between Mims and McDade alleged in the indictment. While there was some evidence presented at trial that both Mims and McDade were involved in drug activity with others (indeed, this fact was an underpinning of the defense theory), there was no evidence of a conspiracy sufficiently extended to have confused the jury, nor was there detailed evidence concerning arguably unrelated conspiratorial agreements which either defendant might have made. Thus, even if the issue had been properly preserved for appeal, we would find that there was no basis for a multiple conspiracy instruction in this case.

### III. Conclusion

In conclusion, we uphold the convictions of both defendants for possession of cocaine base with intent to distribute and for using or carrying a firearm during a drug trafficking offense. However, we reverse the convictions for conspiracy to distribute cocaine base since they rested on a plainly erroneous buyer-seller instruction which had the effect of depriving the defendants of a jury determination of guilt.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.