129 F.3d 1268
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Chester B. JONES, Defendant-Appellant.
Clarence Earl GEIGER, Sr., Defendant-Appellant.
 No. 95-CR-40063.
 United States Court of Appeals, Seventh Circuit.
 Argued October 2, 1997.
Decided October 21, 1997.
 
 Appeal from the United States District Court for the Southern District of Illinois.
 Before ESCHBACH, EASTERBROOK, and WOOD, Circuit Judges.
 ORDER
 GILBERT, Chief Judge.
 
 
 1
 A jury found defendant, Chester B. Jones, guilty of conspiracy to distribute and possess with intent to distribute cocaine base (crack cocaine) under 21 U.S.C. § 846 (Count I) and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count VII). The jun' also convicted Jones' co-defendant, Clarence Earl Geiger, Sr., of conspiracy to distribute and possess with intent to distribute cocaine base under 21 U.S.C. § 846 (Count I); knowingly and intentionally distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count II), and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count VII). Jones' and Geiger's appeals were consolidated for disposition. Jones' appeal was argued before this court on October 2, 11997. Geiger's attorney seeks to withdraw on the ground that there are no issues of merit to be raised on appeal. Anders v. California, 386 U.S. 738 (1967); United States v. Wagner, 103 F.3d 551 (7th Cir.1996).
 
 
 2
 Geiger and Jones were involved in a drug operation based out of Sandusky, Illinois. They bought cocaine and cocaine base in Arkansas and distributed cocaine base throughout Southern Illinois. Geiger was the leader of the drug operation and Jones was Geiger's "righthand guy." Jones and Geiger supplied other crack dealers with cocaine base, including their co-defendants who pleaded guilty and testified for the government at trial. On August 16, 1994, Jones, Geiger, Cameron Shaw, and Selma McCaster drove from Sandusky to Carbondale, Illinois. They arrived at the Sunset Motel where Geiger parked his van adjacent to Room 22. While Geiger and McCaster staved in the van, Jones and Shaw sold cocaine base to customers who came to the motel room. A confidential informant contacted the Carbondale Police Department explaining the drug distribution at the Sunset Motel. The Carbondale police, in cooperation with the Southern Illinois Enforcement Group (SIEG), planned a controlled buy and secured positions near the Sunset Motel. In the early morning of August 17, 1994, an undercover SIEG detective, Arthur Bigler, went to the Sunset Motel where the informant introduced him to Shaw as a possible drug customer. Shaw, Bigler, and the confidential informant went into Room 22, where Shaw provided five rocks of cocaine base in exchange for $100 of police "buy money." Shortly thereafter, Geiger's van left the motel parking lot at which time the police stopped the vehicle arresting Geiger, Shaw, Jones, and McCaster. After searching the van, the police recovered over 10.1 grams of crack cocaine from the side door behind the passenger seat, a package with .1 gram of cocaine base under the driver's seat, the $100 bill used in the controlled drug buy, and approximately $5,000.
 
 I. JONES' APPEAL
 
 3
 First, Jones contends that his conviction on Count VII, possession with the intent to distribute cocaine base, should be reversed because the government failed to present sufficient evidence showing that Jones constructively possessed the 10.1 grams of cocaine base seized in Geiger's van. "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Covarrubias, 65 F.3d 1362, 1369 (7th Cir.1995) (citations omitted).
 
 
 4
 Viewing the trial testimony in a light most favorable to the prosecution, we conclude that there is sufficient evidence from which the jury could find Jones guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). Officer Bigler testified that on August 17, 1994, Jones was involved in a drug transaction at the Sunset Motel in Carbondale. Bigler testified that as he approached the Sunset Motel he saw Geiger's van with Jones asleep in the passenger seat. Bigler stated that Shaw reached into the driver's side of the van before the drug deal. After the confidential informant, Shaw, and Bigler entered Room 22 at the Sunset Motel, Shaw revealed five rocks of cocaine base. In addition, Shaw testified that Jones and he sold over ten packages of cocaine base in various amounts on August 16, 1994, the night before their arrest. Furthermore, Sergeant Chuck Shiplett of the Carbondale Police Department testified to the stop and consequent search of Geiger's van after the controlled buy. He testified that he located a package of what he suspected as crack cocaine under the driver's front seat. He also stated that he found another package containing a golf ball sized piece of crack cocaine in the rear passenger side door.
 
 
 5
 It can be reasonably inferred from Officer Bigler's testimony that Jones retrieved the crack from the van before the drug sales, as Shaw had done, indicating that Jones had the power and intention to exercise control over the crack. In addition, the search.of the van revealed that crack cocaine was within the control of the occupants. As such, there is sufficient evidence that Jones had the intention and power to control the cocaine, either through himself or the others in the van; therefore, he constructively possessed the 10 grams of cocaine seized from Geiger's van. See Covarrubias, 65 F.3d at 1369.
 
 
 6
 Next, Jones contends that the district court improperly instructed the jury concerning his statements made to trial witnesses. Specifically, Jones asserts that the Seventh Circuit Pattern Jury Instruction Number 3.09 may have caused the jury to believe that he made an admission or confession. Pattern Jury Instruction Number 3.09 states:
 
 
 7
 Evidence has been received concerning a statement said to have been made by the defendant. It is for you to determine whether the defendant did in fact make the statement. If you find that the defendant did make the statement, then you must determine what weight, if any, you feel the statement deserves. In determining what weight, if any, should be given the statement, you should consider all matters in evidence having to do with the statement, including those concerning the defendant's personal characteristics and the conditions under which the statement was made.
 
 
 8
 This court's review of jury instructions is limited; we interpret jury instructions as a whole and determine whether the instructions sufficiently inform the jury of the correct, applicable law. Wilson v. Williams, 83 F.3d 870, 874 (7th Cir.1996). The Committee Comment to Instruction Number 3.09 states that the instruction purposely uses the word "statement" in lieu of "admission" and "confession" because "statement" is a neutral description. The Committee Comment also states that Jury Instruction Number 3.09 is not directed to vicarious or adoptive admissions or statements made in furtherance of a conspiracy. The district court also gave a conspiracy instruction, modeled after Seventh Circuit Pattern Jury Instruction Number 5.11. Recognizing that Pattern Instruction 3.09 is a limiting instruction and viewing the instructions as a whole, we conclude that jurors were informed of the correct, applicable law.
 
 
 9
 Jones also challenges the district court's relevant conduct determination under U.S.S.G. §§ 1B1.3 and 2D1.1. In order to determine relevant conduct, the district court is required to consider not only the quantities and types of drugs in the specific offenses, but also drugs that were "part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Acosta, 85 F.3d 275, 279 (7th Cir.1996) (citation omitted). Estimates of the drug quantities attributable to a defendant are permissible, as long as they are based on evidence possessing sufficient indicia of reliability. United States v. Howard, 80 F.3d 1194, 1204 (7th Cir.1996).
 
 
 10
 Based on the testimony of Hill and McCaster, the probation officer determined that Jones' relevant conduct involved the distribution of at least 150 grams, but less than 500 grams, of cocaine base. The district court adopted the probation officer's recommendation and relied on Hill's proffer in the FBI report and her trial testimony, concluding that the jury found her "very credible." The FBI report indicated that Hill was aware that Geiger, McCaster, Jones, and Shaw had taken three trips to Carbondale to distribute crack cocaine to individuals. Hill also stated in the report that Geiger had shown her a very large piece of crack cocaine that was possibly one-fourth of a kilogram and that Jones was present at the time. At trial, Hill testified to the large amount of crack that Geiger had shown her, stating the size of the crack piece was "tennis ball size in a solid piece. You know, like a brick cut in half." (Trial Transcript at 418). She testified that Geiger would cut off smaller pieces of crack to sell. Because the district court considered reliable evidence when estimating the amount of drugs involved in the conspiracy, the court did not err when determining Jones' relevant conduct. United States v. Robinson, 96 F.3d 246, 252 (7th Cir.1996).
 
 H. GEIGER'S APPEAL
 
 11
 Geiger's attorney has filed a motion to withdraw asserting that there are no non-frivolous grounds for appeal and an Anders brief outlining the arguable bases for an appeal. Anders v. California, 386 U.S. 738 (1967) Pursuant to Circuit Rule 51(a), Geiger was notified of his counsel's actions and was given an opportunity to respond, but did not. Because counsel's Anders brief is adequate on its face, we limit our review of the record to those issues raised in counsel's brief United States v. Wagner, 103 F.3d 551, 553 (7th Cir.1996).
 
 
 12
 One potential issue raised by counsel in his Anders brief is that Geiger's Presentence Investigation Report (PSR) was not based on factual findings and applicable law. However, the information in the PSR was based on statements by law enforcement agents, and various witnesses, including McCaster and Hill Reviewing the factual bases in the PSR, the probation officer accurately depicted the trial testimony and witness statements. There also is no indication that the probation officer improperly applied the sentencing guidelines. Thus, this argument is without merit.
 
 
 13
 Counsel next raises the potential issue that Geiger's sentence is clearly erroneous because the hearsay relied upon for sentencing was not credible. Not only is the district court permitted to consider hearsay at sentencing, see United States v. Campbell, 985 F.2d 341, 348 (7th Cir.1993), but the hearsay in Geiger's PSR was substantiated at trial by many of the eighteen government witnesses. In addition, Geiger was given ample opportunity to respond and rebut the testimony, but did not.
 
 
 14
 Another potential issued raised by counsel is that a separate buyer-seller jury instruction was warranted, a determination we analyze in the context of the specific facts of a case. United States v. Fort, 998 F.2d 542, 547 (7th Cir.1993). In determining whether the buyer-seller jury instruction is warranted we look to such factors as the amount of drugs involved, their resale value, if the defendant is an addict, and if the quantity and quality of drugs reflect personal consumption. Id. The specific facts of this case include that Geiger was the leader of a drug distribution network. Geiger was not a mere seller, but had developed a drug distribution operation buying larger amounts of cocaine and cocaine base in Arkansas and selling smaller amounts throughout Southern Illinois. McCaster testified that she and Jones accompanied Geiger on trips to Arkansas, where Geiger bought cocaine at approximately a thousand dollars an ounce. Shaw stated that during the night before his arrest, he and Jones sold ten or more packages of cocaine base obtained from Geiger in quantities of $10, $20, and $50. Hence, Geiger's operation involved buying cocaine base in Arkansas--larger than amounts used for personal consumption--and reselling crack for a profit in Southern Illinois. Because the buyer-seller jury instruction had no foundation in the record, the district court did not err by not giving the buyer-seller instruction.
 
 
 15
 Counsel raises the potential argument that tile district court erred by failing to include a conspiracy jury instruction specifically focusing on the conspiracy's agreements. See United States v. Mims, 92 F.3d 461 (7th Cir.1996). In Mims, we concluded that the conspiracy instruction given did not ameliorate an erroneous buyer-seller jury instruction because the buyer-seller instruction went to the heart of the defense theory. Mims, 92 F.3d at 465. Here, no buyer-seller jury instruction was given. Also, the conspiracy jury instruction given was an adaptation of a pattern jury instruction that this court has previously stated was correct. See id. at 464. Therefore, this argument has no merit.
 
 
 16
 Another potential issue raised by counsel is that the district court should have adopted Geiger's proposed jury instruction concerning his willingness to join the conspiracy. The proposed instruction stated that there had to be "more than suspicion, more than knowledge, acquiescence, carelessness, indifference or lack of concern," in Geiger's actions. In United States v. Blanding, 53 F.3d 773, 779-80 (7th Cir.1995), this court concluded that the hierarchy of a conspiracy and the co-defendants' interactions showed that a single conspiracy existed and that the co-conspirators had joined it. Here, the facts are somewhat similar. Geiger was at the top of the hierarchy, directing Jones, Shaw, and others to sell cocaine base for him. Geiger willingly joined the conspiracy, as he masterminded the entire drug operation. Therefore, this claim is baseless.
 
 
 17
 Next, counsel raises the potential argument that the district court's denial of Geiger's motion to transfer to a facility with a law library pending trial was erroneous. However, when a defendant is offered assistance of appointed counsel, even if he rejects counsel, there is no constitutional right to access to a law library, therefore, Geiger did not have a constitutional right of access to a law library as a pretrial detainee. United States v. Chapman, 954 F.2d 1352, 1362 (7th Cir.1992).
 
 
 18
 Geiger's counsel raises the possible argument that Geiger failed to get actual notice that the government intended to use prior convictions to seek an enhanced sentence under the sentencing guidelines. Section 851 of Title 21 requires that the government serve the defendant with notice regarding the use of a prior conviction as a sentencing enhancement. 21 U.S.C. § 851(a). In fact, the record reflects that the government did file an information alleging prior offenses per 21 U.S.C. §§ 841(b) and 851, sending a copy to Geiger's attorney. Therefore, this claim is baseless.
 
 
 19
 Last, counsel raises a possible claim based on ineffective assistance of trial counsel. Typically, ineffective assistance of counsel claims are not reviewed on direct appeal. United States v. Garrett, 90 F.3d 210, 214 (7th Cir.1996). However, this court will take jurisdiction of an ineffective assistance of counsel claim if the defendant's appellate attorney is not the same as his trial attorney and the claim relies on the trial record alone. United States v. Barnes, 83 F.3d 934, 939 (7th Cir.1996). Because Geiger's trial and appellate counsel are the same, this issue is not appropriate for direct appeal.
 
 
 20
 For the foregoing reasons, counsel's motion to withdraw is GRANTED and the appeal is DISMISSED as frivolous in United States v. Geiger, No. 97-1301. We AFFIRM the district court judgment in United States v. Jones, No 96-3862.