**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lavelle SPAN, Defendant–Appellant.**

No. 98–1329.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 15, 1998.

Decided March 30, 1999.

Laura A. Przybylinski (argued), Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

T. Christopher Kelly (argued), Thomas, Kelly, Habermehl & Wood, Madison, WI, for Defendant–Appellant.

Before WOOD, JR., CUDAHY and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Lavelle Span was convicted after a jury trial of two counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and one count of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846. At sentencing, the district court determined that Span's relevant conduct involved more than 50 grams of crack cocaine and sentenced him to 372 months in prison. On appeal, Span argues that the district court erred by failing to adequately instruct the jury on the distinction between a drug conspiracy and a mere buyer-seller relationship; by declining to an-

swer a question posed by the jury during deliberations; by limiting the scope of the defendant's cross-examination of a prosecution witness; and by miscalculating the amount of crack involved for sentencing purposes.

## I. BACKGROUND

Count 1 of the indictment charged Span with a conspiracy to distribute cocaine base, also known as crack cocaine, in violation of 21 U.S.C. § 846. At trial, the government presented testimony from Andrew Seeman and Michael Hudy, among others, to support the conspiracy charge. Seeman testified that he purchased crack from Span for resale three to five times a week. Seeman stated that he and Span had an agreement under which Span would give Seeman a free half gram of crack after Seeman had sold a certain amount. Seeman testified that he purchased crack from Span on at least thirty-two occasions between March 1995 and Span's arrest on June 3, 1995, and that these purchases ranged in size from .5 gram to 3.5 grams. Seeman stated that he could accurately testify that he purchased at least 3.5 grams of crack a week from Span. Michael Hudy testified that he purchased crack almost daily during March, April, and May 1995. Hudy testified that he purchased crack exclusively from Span for a couple of months during that period and that his purchases ranged from $200 to $300 worth of crack a day.

Span also was charged with two substantive drug offenses. Count 2 of the indictment charged Span with distribution of cocaine base on March 9, 1995. This charge was based on a controlled drug buy between Span and a paid police informant, Keith Solberg. At Span's trial, Solberg testified that he paged Span on March 9 to set up the buy and told Span that he wanted to buy .25 ounce, or 7 grams, of crack. Solberg said that Span agreed to meet him at Wiggly Field, a local tavern. A law enforcement agent searched Solberg before his meeting with Span and provided him with $600 in cash. Another agent drove Solberg to Wiggly Field and watched as Solberg entered the bar. Solberg testified that inside the bar he met with Span who gave him 5 grams of crack and 2 grams of powdered cocaine in exchange for $500. Solberg returned to the car where the agent was waiting and gave her $100 and the drugs.

Count 3 charged Span with distribution of cocaine base on June 3, 1995. This charge resulted from a controlled drug transaction in which an informant, Jerry Sanders, bought crack cocaine from Span. Sanders was acting in cooperation with law enforcement officials and testified as a government witness at Span's trial. Sanders testified that he contacted Span on June 3 and set up a buy. Accompanied by law enforcement officials, Sanders went to a bank parking lot to meet Span. Sanders testified that he asked Span for a $40 rock of crack and that Span told him he only had one left. Sanders stated that he gave Span $40 in exchange for the crack cocaine.

Two police officers monitored the June 3 controlled buy. Detective Pitt drove Sanders to the meeting with Span and provided Sanders with $100 in prerecorded currency. Pitt testified that he strip-searched Sanders before the transaction and maintained visual contact with Sanders from the time of the strip-search until Sanders returned to Pitt's car with the crack cocaine following the transaction. Pitt further testified that Sanders wore a body wire during the transaction which allowed Pitt to monitor the conversation between Sanders and Span. Pitt testified that Sanders told Span that he wanted to buy a $40 rock of crack and that Span replied that he was almost out. Pitt stated that Span explained to Sanders that he had been paying $600 an ounce for crack but that recently he had to pay $1,200 an ounce.

Captain Kujawa also monitored the transaction. He testified that he watched Sanders walk up to Span's car and participate in a conversation. Kujawa testified that he was only able to hear part of the conversation from the body wire transmission. Kujawa observed Sanders walk away from Span's car, and then, after receiving confirmation from Detective Pitt that a drug transaction had occurred, Kujawa stopped Span and placed him under arrest. Kujawa searched Span and discovered $40 of the prerecorded currency. Kujawa did not find any drugs,

baggies, or drug residue when he searched Span.

The jury convicted Span on all three counts. At sentencing, the court determined that the amount of cocaine base attributable to Span was 66.8 grams. To reach this figure, the court attributed 30 grams to Span's dealings with Hudy based on the fact that Hudy paid from $200 to $300 a day for crack, that a gram of crack cost approximately $200, and that Hudy testified that he dealt exclusively with Span for at least a month. The court further determined that Seeman purchased crack from Span at least ten times at 3.5 grams a purchase, adding 35 grams. The court then added 1.8 grams for the Solberg deal charged in Count 2.[1] The court sentenced Span to 372 months imprisonment on the conspiracy charge and to 240 months imprisonment for each of the substantive counts, to be served concurrently. The court ordered that these sentences be served consecutively to Span's sentence upon the revocation of his probation in state court. Span filed this timely appeal.

## II. ANALYSIS

### A. Buyer–Seller Jury Instruction

With respect to the conspiracy count, the court instructed the jury:

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose ... the government must prove the existence of an agreement.... The existence of a mere buyer/seller relationship without more is not sufficient to establish the defendant's guilt of the charged conspiracy. The government must prove that the defendant knowingly and intentionally joined the charged conspiracy knowing the conspiracy's aim and intending to achieve it.

Span objected to this instruction and requested that the court instruct the jury:

An agreement between a buyer and a seller of illegal drugs, in which the buyer merely agrees to buy the drugs from the seller and the seller merely agrees to sell

the drugs to the buyer, does not constitute a conspiracy between them no matter what the buyer intended to do with the drugs after buying them.

Span argues that the jury instructions given in his case created an irreconcilable conflict and allowed the jury to convict him for conspiracy based only on evidence of a buyer-seller relationship. On appeal, we must view the jury instructions as a whole to determine whether they represent accurate statements of the law and are supported by the record. *United States v. Lloyd*, 71 F.3d 1256, 1266 (7th Cir.1995) (citing *Doe v. Johnson*, 52 F.3d 1448, 1456 (7th Cir.1995)). If so, we will not disturb them. *Id.* " 'Reversal is warranted only if the instruction misguides the jury so much that the litigant is prejudiced.' " *Id.* (quoting Maltby v. Winston, 36 F.3d 548, 560 (7th Cir.1994)).

Span contends that the court's jury instructions differed little from the instructions found to be in error in *United States v. Mims*, 92 F.3d 461 (7th Cir.1996). However, unlike the instructions in *Mims*, the instructions given in the present case emphasized the necessity of finding a conspiratorial agreement. Furthermore, the buyer-seller instruction in the present case was an accurate statement of the law in this circuit. The jury was informed that the existence of a mere buyer-seller relationship without more was insufficient to establish guilt with respect to the conspiracy charge. The instructions as a whole made clear that in order to convict, the jury must find that Span knew of the charged conspiracy and that he acted with the intent to further its aims. *See United States v. Fagan*, 35 F.3d 1203, 1207 (7th Cir.1994). The court's statement, that a buyer-seller relationship without more is insufficient to establish a conspiracy, is not in conflict with this. The district court's jury instructions represented accurate statements of the law and could not have misguided the jury. Span's claim fails.

### B. Supplemental Jury Instruction

Span contends that the district court erred in its response to a question

---

1. The district court did not explain how it arrived at the 1.8 gram figure for Solberg's purchase. Solberg testified at trial that he pur-

chased 5 grams of crack from Span on March 9, 1995.

posed by the jury during deliberations. During deliberations, the jury sent a note to the judge which read, "Your Honor, are we able to draw from the whole proceedings to focus on a particular count, that is Count 2, taking into account the rest of the proceedings to formulate a verdict?" In response, the judge provided the jury with a written copy of the original jury instructions.[2] Over defense counsel's objection, the district court refused to reinstruct the jury or to provide them with supplemental instructions. We review this decision for abuse of discretion. *Akrabawi v. Carnes Co.*, 152 F.3d 688, 695 (7th Cir.1998).

■ Span asserts that the district court should have reiterated to the jury that it should consider each count and the evidence relating to it separately and that the court should have given the jury a supplemental instruction stating that the evidence received as to the substantive counts (Counts 2 and 3) could not be considered as evidence supporting the existence of a conspiracy under Count 1. He argues that by merely providing the jury with a written version of the instructions they had already heard, the district judge failed to make any response at all to the jury's question. However, "[i]f the original jury charge clearly and correctly states the applicable law, the judge may properly answer the jury's question by instructing the jury to reread the instructions." *United States v. Mealy*, 851 F.2d 890, 902 (7th Cir. 1988) (citations omitted). In the present case, the original jury instructions stated:

> Each count of the indictment charges the defendant with having committed a separate offense. Each count and the evidence relating to it should be considered separately and a separate verdict should be returned as to each count. Your verdict of guilty or not guilty of an offense charged in one count should not control your decision as to any other count.

This statement presents an accurate statement of the law. Span argues that the court failed to answer the jury's question with complete accuracy because it did not advise the jury to read the instructions or direct the

jury to consider a specific section in the instructions. Clearly, by providing the jury with a copy of the written instructions, the judge directed the jury's attention to the instructions. These instructions clearly and correctly state the applicable law. It was not necessary for the district judge to direct the jury to specific sections of the instructions, and, therefore, the district court did not abuse its discretion in refusing to supplement or reiterate the jury instructions.

C. Scope of Cross–Examination

■ Span contends that the district court erred by restricting the scope of his cross-examination of prosecution witness Jerry Sanders. At the time of his June 3, 1995 controlled purchase of drugs from Span, Sanders had been charged in Wisconsin state court with first degree sexual assault of a child, a felony. Sometime after June 1995, the first degree sexual assault charge against Sanders was dismissed, and he pled guilty to fourth degree sexual assault, a misdemeanor. Prior to Sanders' trial testimony, Span advised the court of his desire to cross-examine Sanders regarding the reduction in the sexual assault charge in an attempt to demonstrate that Sanders had a motive to set up Span. The district judge allowed Span to ask Sanders whether, at the time of the controlled drug buy, there was a felony charge pending against him and whether that charge was reduced to a misdemeanor as a result of his cooperation with the authorities. The judge denied Span's request to elicit testimony that Sanders' pending felony charge was for first degree sexual assault of a child.

■ Span argues that the district court erred in refusing to allow him to elicit the nature of Sanders' pending felony charge. Criminal defendants have a Sixth Amendment right to cross-examine witnesses. *United States v. Hernandez*, 84 F.3d 931, 933 (7th Cir.1996) (citing *Ohio v. Roberts*, 448 U.S. 56, 62–64, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). The district court, however, retains broad discretion to impose reasonable limits on the extent and scope of cross-examination. *Id.* When limiting the extent or scope of cross-examination, a district court

---

**2.** Chief Judge Shabaz generally does not provide written instructions unless the jury asks for them.

"violates the Sixth Amendment only where it has so abused its discretion as to prevent the jury from making a discriminating appraisal of the witness' testimony." *United States v. Valles*, 41 F.3d 355, 359 (7th Cir.1994) (citing *United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir.1987)).

Span contends that telling the jury that Sanders' charge had been reduced from a felony to a misdemeanor did not give the jury any real sense of the magnitude of the benefit Sanders had received or the corresponding extent of Sanders' alleged bias. Span asserts that "[h]ad the jury known that Sanders was charged with first degree sexual assault of a child, ... the jury would have understood that Sanders was in serious trouble when he decided to cooperate with police." Span further asserts that "[t]he jury would not have any difficulty understanding that someone convicted of first degree sexual assault of a child is likely to spend a good part of his life in prison." [3] The mere exclusion of the name of the felony charge that was pending against Sanders did not prevent the jury from making a discriminating appraisal of his testimony. The jury was informed that at the time he decided to cooperate with police, Sanders had a pending felony charge and that later that charge was reduced to a misdemeanor. Span was able to introduce evidence of Sanders' basic reason for bias. The district court did not abuse its discretion in excluding the nature of Sanders' pending felony charge.

■ Furthermore, even if the district court erred in excluding the name of Sanders' pending felony charge, the error would be harmless. Two police officers testified extensively regarding their monitoring of the transaction between Span and Sanders. One of the officers testified that, through Sanders' body wire, he was able to hear the two men conducting the drug purchase. Given this overwhelming evidence against Span on Count 3, excluding the nature of Sanders' pending felony charge "could not have had a substantial influence over the jury." *United*

States v. Graffia, 120 F.3d 706, 713 (7th Cir.1997).

## D. Drug Quantity Calculation

■ Finally, Span argues that the district court's sentencing calculation was based on unreliable and contradictory evidence and, therefore, lacked an adequate evidentiary basis. The district court's drug quantity calculation is a factual finding which we review for clear error. *United States v. Burns*, 128 F.3d 553, 554 (7th Cir.1997). We must affirm "unless on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *United States v. Beler*, 20 F.3d 1428, 1431 (7th Cir. 1994) (quotations and citations omitted). Clear error exists if the district court's sentencing calculation rests on an inadequate evidentiary basis. *United States v. Acosta*, 85 F.3d 275, 283 (7th Cir.1996).

■ In the present case, the district court's drug quantity calculation was based primarily on Span's drug transactions with Seeman and Hudy. The district judge correctly noted that discrepancies existed both within these witnesses' trial testimonies and between the trial testimony and initial statements the men made to law enforcement officials. When a district court "clearly relies upon one of two contradictory statements offered by a single witness, it should directly address the contradiction and explain why it credits one statement rather than the other." *Acosta*, 85 F.3d at 282 (citation and quotation omitted).

In the present case, the district judge offered an extensive explanation for his interpretation of Hudy's testimony. However, when analyzing Span's transactions with Seeman, the district court concluded that Seeman purchased crack from Span "ten times at 3 to 3.5 grams a piece or 35 grams." This conclusion is not supported by the evidence. At trial, Seeman testified that he purchased crack from Span four times a week from mid-March 1995 until Span's arrest on June 3, 1995 and that he made a total of at least

---

3. Initially, in his brief on appeal, Span argued that Sanders' bias could be inferred from the fact that first degree sexual assault carries with it a maximum sentence of forty years while the misdemeanor sexual assault has a potential sentence of only nine months. However, Span never attempted to introduce evidence of the potential sentences for the two offenses in the district court, and the district court did not make a ruling on the issue. Therefore, we limit our analysis to the district court's decision to exclude the nature of Sanders' pending felony charge.

thirty-two purchases. This testimony was in contradiction to Seeman's earlier statements to law enforcement officials that he made ten or more purchases. The district court, erring on the side of caution, calculated Span's drug sales to Seeman based on a "floor" of ten purchases. The district judge then found that each of these purchases consisted of 3.5 grams of crack, based on a statement that the district judge believed Seeman to have made that "at least it was an 8 ball [3.5 grams] that [he] bought each time." However, an examination of the record shows that Span testified that he bought at least 3.5 grams of crack a week, not each time. Span clearly testified that his individual purchases ranged in size from .5 gram to 3.5 grams, a factor not addressed by the district court at sentencing. In the absence of an explanation or other evidence justifying the judge's choice of the 3.5 gram amount, we conclude that the district judge's calculation lacks an adequate evidentiary basis. *See Acosta*, 85 F.3d at 283. Therefore, we must remand the case to the district court for resentencing.

## III. CONCLUSION

Span's convictions are AFFIRMED. His sentence, however, is VACATED, and the case is REMANDED to the district court for resentencing.