# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 03-4055

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVE FIEDEKE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 02 CR 134—**Allen Sharp**, *Judge.*

ARGUED JUNE 9, 2004—DECIDED SEPTEMBER 15, 2004

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.*

## I. Background

Defendant-Appellant Steve Fiedeke and a business partner, Tim Pinnick, purchased a wholesale distribution company in January, 2002. Fiedeke and Pinnick planned to sell various products to convenience stores throughout Northern Indiana. One of the products they sought to sell was ephedrine, a federally regulated List I chemical. The federal regulations require a prospective seller to obtain a license

from the Drug Enforcement Administration ("DEA"). Failure to obtain a license and then selling is a crime.

Fiedeke applied for a license with the DEA. DEA agents spoke to Fiedeke and told him that they would recommend denying his application. The DEA was apparently concerned about the volume of ephedrine Fiedeke sought to distribute and his plan to store the drugs in his garage. At one point during their conversation about licensing, Fiedeke asked DEA Agent Raber whether it was legal to sell ephedrine as an agent of another company. Raber responded by stating that he is not a lawyer. Fiedeke promised to appeal the denial of his license application.

At some point, Fiedeke read DEA regulation 21 C.F.R. § 1309.24 which reads as follows:

> Exemption of Agents and Employees. The requirement of registration is waived for any agent or employee of a person who is registered to engage in any group of independent activities, if such agent or employee is acting in the usual course of his or her business or employment.

In April, 2002 Fiedeke contacted Dean Hollen of the Three Rivers Trading Company, a licensed ephedrine distributer, in the hopes of obtaining some of the drug for distribution. Hollen repeatedly refused Fiedeke's requests. On one of these visits, when Hollen was out of town, Fiedeke told Hollen's wife that her husband had already agreed to sell him ephedrine and that he would be selling it as Hollen's agent. Mrs. Hollen nonetheless refused to sell the product to Fiedeke.

Fiedeke tried to purchase the drug from another licensed ephedrine distributer, Don Tinkham, owner of Bestline Foods, who also refused Fiedeke's requests. When DEA agents called Tinkham in preparation for Fiedeke's appeal of the denial of his license, Tinkham mentioned that Fiedeke had been trying to purchase ephedrine from him. After discussing it, Tinkham agreed to assist the DEA in an undercover

drug operation. To that end, Tinkham called Pinnick and said that he had changed his mind about selling ephedrine to Pinnick and Fiedeke.

In October, 2002 Fiedeke purchased an amount of ephedrine from Tinkham's Bestline Foods and sold it to various convenience stores in Indiana. He told one of his customers that he had just received his license to sell ephedrine. However, when that same customer asked for more ephedrine at a later date, Fiedeke said that the license required too much paperwork and that he was not going to keep it. Another store owner believed that Bestline Foods was a competitor of Fiedeke's.

Fiedeke again purchased ephedrine from Bestline Foods in late November, 2002. As he was beginning to distribute the product, he noticed that he was being followed by the police. Fiedeke then secreted the remaining ephedrine in a laundromat that he owned. Shortly thereafter, Fiedeke surrendered to the police.

A federal grand jury returned a two-count indictment charging Fiedeke with distributing a List I chemical, ephedrine, without being registered with the DEA and attempting to distribute a List I chemical, ephedrine, in violation of 21 U.S.C. §§ 843(a)(9) and 846. A jury trial resulted in guilty verdicts on both counts. Fiedeke was sentenced to four days in jail and one year of supervised probation. The district court stayed the execution of Fiedeke's sentence while this appeal is pending.

## II. Discussion

### A. Entrapment Jury Instruction

Fiedeke argues that the district court denied him due process by refusing to instruct the jury on his entrapment defense. A defendant is entitled to have the jury consider any theory of defense supported by law and evidence. *United States v. Kelley*, 864 F.2d 569, 572 (7th Cir. 1989). This does

not mean that a defendant is entitled to any particular jury instruction. To be entitled to a particular theory of defense instruction, the defendant must show the following: 1) the instruction is a correct statement of the law, 2) the evidence in the case supports the theory of defense, 3) that theory is not already part of the charge, and 4) a failure to provide the instruction would deny a fair trial. *United States v. Chavin*, 316 F.3d 666, 670 (7th Cir. 2002). We review a district court's refusal to give a tendered jury instruction de novo. *United States v. Irorere*, 228 F.3d 816, 825 (7th Cir. 2000).

As a prerequisite for presenting to the jury an entrapment defense the defendant must make two distinct showings: 1) the government induced the defendant to commit the crime, and 2) the defendant was not predisposed to commit the offense. *United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir. 1999). The entrapment defense instruction should be given to the jury only if the evidence is sufficient for a reasonable jury to find entrapment. *Id*.

It is clear that the government did not induce Fiedeke to commit the crime of distributing or attempting to distribute ephedrine without a proper license. The government assisted in Fiedeke's procurement and possession of the drug, which are not criminal offenses. Furthermore, the government did not attempt to persuade the defendant to sell the drug or assist him in the actual distribution of the drug.

The principal question in entrapment cases is whether the defendant was predisposed to commit the crime; whether he "was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews v. United States*, 485 U.S. 58, 63 (1988). Fiedeke was the unwary criminal. Prior to the government's involvement, Fiedeke had repeatedly attempted to purchase ephedrine from Hollen and Tinkham, knowing that he was not permitted to distribute it. On one occasion, Fiedeke even told Hollen's wife that her husband

had already agreed to permit Fiedeke to conduct a transaction for the sale of the drug and that he would be selling it as Hollen's agent. This was a lie. Hollen had not agreed to sell Fiedeke any ephedrine. Fiedeke testified that he wanted to distribute the ephedrine, that he was under no obligation to distribute it, and that Tinkham did him a favor by selling it to him.

Fiedeke's brief says, "[i]t was the government through Mr. Tinkham who induced the defendant to purchase the ephedrine. It was at the government's request that Tinkham called the defendant offering to sell ephedrine. It was the government, through Tinkham, who assured the defendant that everything was within DEA guidelines." This apparently was to show that he was reluctant to engage in the criminal conduct, and would not have done so if is was not for the government's assurances that "everything was within DEA guidelines." The first sentence was shown to be untrue; Fiedeke had attempted to obtain ephedrine without a license before the government became involved in the investigation. This essentially negates the importance or relevance of the second sentence. The third sentence, however, deserves a bit more attention.

The statement by Tinkham that "everything was within DEA guidelines" appears to be correct in that the purchase of ephedrine by Fiedeke was not illegal. Therefore, the transaction in which Tinkham and Fiedeke engaged was within DEA guidelines and, alone would not have opened the defendant to criminal liability. Second, the evidence shows that Fiedeke intended to distribute the ephedrine without such assurances anyway. The evidence shows an attempt to fraudulently induce Hollen's wife to sell him ephedrine. Other instances of Fiedeke repeatedly attempting to purchase the drug prior to receiving assurances that everything was legal also showed that he was predisposed to commit the crime.

*B. Burden of Proving Exception*

At trial, Fiedeke claimed that he was an agent of Tinkham and therefore, exempt from criminal liability under 21 U.S.C. § 822(c). The trial court gave an instruction which required the defendant to prove agency. Fiedeke claims that this instruction improperly shifted the burden of proof and thus, violated his right to a fair trial. In proposing the instruction that required Fiedeke to prove agency, the government relied upon 21 U.S.C. § 885(a)(1) which reads, in relevant part, as follows:

> It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this subchapter, and the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit.

Fiedeke concedes that 21 U.S.C. § 885(a) applies to List I chemicals and, by extension, to him and his conduct. With this concession, the inquiry is essentially over. Fiedeke's agency defense is, as his own brief says, an "exemption." The government is not required to "negative *any* exemption" under the statute. So, the plain language of the statute clearly puts the agency-issue's burden of proof on Fiedeke, for he is the person "claiming its benefit."

*C. Specific Intent Instruction for Attempt Count*

Fiedeke's next argument is that he was entitled to a specific intent instruction on the charge of attempt. We agree that he was so entitled, as did the district court when it gave a specific intent instruction. It appears as though Fiedeke's complaint is that he did not get *his* specific intent

instruction. In reviewing a challenge to jury instructions we view the instructions as a whole and consider the challenged instruction in the context of the entire proceeding. *Resnover v. Pearson*, 965 F.3d 1453, 1463 (7th Cir. 1992). The relevant inquiry in such issues is whether the instruction conveyed the correct information to the jury reasonably well. *Id.*

The Seventh Edition of Black's Law Dictionary defines specific intent as, "[t]he intent to accomplish the precise criminal act that one is later charged with." Seventh Circuit case law is accord with this definition for attempted crimes require the intent to commit the underlying offense and a substantial step towards its completion. *E.g.*, *United States v. Magana*, 118 F.3d 1173, 1198 (7th Cir. 1997). The given instruction read, in relevant part, "the government must prove . . . Defendant intended to distribute a List I chemical, ephedrine product, without being registered by the Drug Enforcement Administration; and [t]hereafter, Defendant did an act constituting a substantial step towards the commission of that crime but falls short of completing the crime." The instructions given by the district court conveyed the specific intent information clearly and properly.

### D. The Jury Instructions as a Whole Did Not Deny Due Process

Fiedeke claims, "reviewing the instructions as a whole, it can be seen that the jury was not properly instructed on the burden of proof." He then goes on to rehash all his previous arguments in support of his claim that he was denied due process as a result of the jury instructions. As we have found against him on his earlier arguments, they are insufficient to support this argument. Two points made by Fiedeke, however, deserve attention.

Fiedeke argues that his due process rights were violated because of "the lack of an instruction making it clear the

burden of proof remained with the government." This argument is completely meritless. Instruction number ten, given by the court, says "[t]he burden of proof stays with the government throughout the case."

Fiedeke's final argument takes issue with the agency instruction. As was noted before, Fiedeke claimed that he was an agent of a licensed ephedrine distributer and therefore, he was exempt from criminal liability. Also discussed before, we noted that the burden of proof on this issue properly remained with Fiedeke.

This court will not disturb a criminal conviction based upon problems with the jury instructions unless we believe those instructions prejudiced the defendant. *United States v. Souffront*, 338 F.3d 809, 834 (7th Cir. 2003). Because it clear that Fiedeke was not an agent of a licensed ephedrine distributer, any inadequacies in the agency instruction could not serve to prejudice his case.

"Agent" is defined by 21 U.S.C. § 802(3) which reads, "an authorized person who acts on behalf of or at the direction of [an ephedrine] distributer." The jury instructions on agency—which Fiedeke makes no complaint about except with regard to the lack of a burden of proof—required the jury to find 1) a manifestation by the principal that the defendant act on behalf of the principal and with his authority, 2) defendant's acceptance of principal's authority over him, and 3) the principal exerted control over the defendant. The conversations between Fiedeke and Tinkham, the licensed distributer, show that Tinkham never authorized Fiedeke to sell product on his behalf. It is also clear that Tinkham did not employ Fiedeke. There is no evidence that Tinkham exercised any direction of, or authority over Fiedeke. Fiedeke even testified that he decided who to sell to and under what terms. Simply put, the evidence showing that Fiedeke was *not* an agent of a licensed ephedrine distributer is overwhelming. Therefore, since we find no

prejudice to the defendant, we do not disturb the conviction.

### III.  Conclusion

For the reasons stated herein, we AFFIRM.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—9-15-04