In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-3304

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRUNO CHOINIERE,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 05 CR 56—**Allen Sharp**, *Judge.*

ARGUED MAY 31, 2007—DECIDED FEBRUARY 28, 2008

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Chiropractor Bruno Choiniere developed what he terms a back "brace" and the government deems a back "belt," and he billed Medicare, Medicaid, and private insurance companies over $1000 each time he prescribed it. The government maintained it was worth about $50, and a jury convicted Choiniere of health care fraud, fraudulent concealment of health care benefits, and money laundering. On appeal, Choiniere argues that the district court committed reversible error when it refused to give two of the proposed intent to defraud jury instructions that he tendered. Because the

instructions the jury received already conveyed the theories in Choiniere's proposed instructions, and the failure to give the instructions did not deny him a fair trial, we find no error in the decision not to give the jury the two instructions. We also affirm the sentencing enhancement Choiniere received for using minors in furtherance of his scheme, as the district court was entitled to credit the testimony of the minors' mother and grandmother that Choiniere had solicited the minors' assistance. Therefore, as we discuss in more detail below, we affirm the judgment of the district court.

## I.  BACKGROUND

Choiniere, a native of Quebec, worked as a chiropractor in Canada for seven years. In 1999, he moved to South Bend, Indiana, obtained his Indiana chiropractor's license, and began working at his brother's chiropractic clinic. Choiniere left his brother's clinic in late 2002 and started practicing at an alternative health clinic in South Bend.

After hearing patients' complaints of back braces that were too rigid, Choiniere developed his own back belt, one primarily made of leather, a few strips of thin plastic, and velcro. Choiniere also developed a neck pillow and a back pillow made of fabric and batting. Choiniere began dispensing the belt and pillows to patients at the clinic who complained of back pain. In early 2003, Choiniere submitted a $49.95 bill to Medicare for the neck pillow, but Medicare refused to pay it. Choiniere soon began to bill Medicare and Indiana Medicaid $1040 for his back belt, submitting it under the code for a "custom-fitted lumbral sacral orthosis." Later that year, he started billing $1370 for

the same belt. To do so, he submitted the bills under a different code, now representing that his belt was a "custom-fabricated molded-to-patient lumbar-sacral support."

A Medicare coding expert, a neurosurgeon, a certified orthotist, and two chiropractors, however, all testified at trial that the belt did not fall within either category. The belt was neither custom fabricated nor molded to patients; instead, it was manufactured in mass quantities and standardized sizes. In addition, the belt did not immobilize the lumbar-sacral region of the spine. The witnesses said that at best, the belt was a prefabricated lumbar support, similar to a weightlifting belt, that should have been billed for less than $50 if actually dispensed.

Choiniere eventually left the health clinic and went out on his own. From 2003 through 2005, he traveled throughout Indiana and Michigan and held what he termed "back pain relief clinics." Choiniere targeted persons who were elderly, low-income, or had disabilities to attend his "clinics," where the preferred method of treatment was Choiniere's back belt. He performed only very cursory physical examinations, or sometimes none at all, and little or no health history was taken. In less than two years, Choiniere billed Medicare, Indiana Medicaid, and private insurance companies approximately $2 million for the back belt he had developed. He was paid more than $1.5 million.

Choiniere offered patients free food at many of the clinics and sometimes a free short massage from a massage therapist. Some clinic attendees also testified that they had received free neck and back pillows. Paul Pasman and Sandra Simmons-Bauman assisted Choiniere at the clinics.

They worked on commission and received between $75 and $140 per belt sold.

A jury convicted Choiniere of health care billing fraud, money laundering, and fraudulent concealment of over-payment of health care benefits. At sentencing, the district court imposed a two-level enhancement for using minors to further his scheme. Two witnesses had testified that Choiniere offered free movie tickets to two children, aged seven and eleven, in exchange for their help in passing out fliers advertising a clinic. The district court credited this testimony when it imposed the enhancement. Choiniere received a sentence of 151 months' imprisonment, followed by two years of supervised release. The district court also ordered him to pay $1,580,582 in restitution. He now appeals.

## II. ANALYSIS

### A. Proposed Jury Instructions

Choiniere maintains that he should receive a new trial because the district court refused to give the jury two instructions he proposed. We review a district court's refusal to give a requested jury instruction de novo. *United States v. Prude*, 489 F.3d 873, 882 (7th Cir. 2007). Although a defendant may have the jury consider any theory of defense that is supported by law and fact, a defendant is not automatically entitled to a particular jury instruction. *United States v. James*, 464 F.3d 699, 707 (7th Cir. 2006). Rather, to warrant a specific theory of defense instruction, the defendant must demonstrate: (1) the instruction is a correct statement of the law; (2) the evidence in the case supports the theory of defense; (3) the theory is not already part of the charge; and (4) the failure to provide the

instruction would deny the defendant a fair trial. *Id.* (citing *United States v. Fiedeke*, 384 F.3d 407, 410 (7th Cir. 2004)).

### 1. Choiniere's Proposed Instruction No. 9

Paragraph 21 of the indictment charged in part that Choiniere "advertised and held meetings at which patients could receive free food, free back massages, and free neck and back pillows, which is a violation of the applicable rules and regulations to solicit patients in this way." In light of this charge, Choiniere argues that the district court erred when it refused to give an instruction he proposed that said:

> Federal regulations controlling payments made [by] federal medicare or state medicaid health care programs do not prohibit the giving of incentives by health care providers that are of "nominal value." The Office of Inspector General defines "nominal value" as no more than $10.00 per item or $50.00 in the aggregate to any one beneficiary on an annual basis.

Choiniere testified at trial that he had read an August 2002 special advisory bulletin published by the Office of Inspector General (OIG) of the Department of Health and Human Services, and that he took it to mean he could give gifts in the amounts specified in his proposed instruction. *See* 67 Fed. Reg. 55855-56, Office of Inspector General, "Special Advisory Bulletin: Offering Gifts and Other Inducements to Beneficiaries," August 2002. The bulletin, introduced into evidence, states that the OIG interpreted the Health Insurance Portability and Accountability Act (HIPAA) to permit Medicare or Medicaid providers to offer beneficiaries inexpensive gifts or services without

violating the statute. In addition, the bulletin defines "inexpensive gifts or services" as those that have a retail value of no more than $10 individually, and no more than $50 in the aggregate annually per patient—the same amounts in Choiniere's proposed instruction. And although the bulletin deals with civil penalties under HIPAA, not the criminal statutes with which Choiniere had been charged, the government states that the instruction, standing alone, may have been a correct statement of law.

Nonetheless, the government maintains that the evidence in this case does not support the theory reflected in the instruction. *Cf. United States v. Al-Shahin*, 474 F.3d 941, 948 (7th Cir. 2007) (finding no error in refusal to give instruction when evidence did not support it); *United States v. Hendricks*, 319 F.3d 993, 1006 (7th Cir. 2003) (same). We agree, as Choiniere provided items of value above the $10 per item and $50 per patient cut-offs that his proposed instruction deemed acceptable. Multiple witnesses testified that they had been offered or received a free neck pillow, and Choiniere himself had valued the neck pillow at $49.95 in February 2003—well above the $10 per item threshold. Choiniere also provided free Subway sandwiches, chips, drinks, doughnuts, and a short massage to patients. Choiniere did not provide items of merely nominal value to the patients at his clinics.

In addition, a defendant seeking a proposed instruction must demonstrate that the charge to the jury did not already encompass the theory contained in the proposed instruction. *Prude*, 489 F.3d at 882. In analyzing whether the defendant has made this showing, we look at the instructions as a whole to determine whether they adequately informed the jury of the theory of defense. *Id*. The rationale behind Choiniere's proposed jury instruction no. 9 is that

he had read regulations leading him to believe that he could give items that did not exceed thresholds of $10 per item or $50 per person per year; as a result, he maintains that he did not intentionally violate the law.

We conclude that the instructions the jury received contained Choiniere's theory that he did not have the intent to defraud. In particular, the jury received an instruction (instruction no. 25) that stated:

> During this trial there has been extensive evidence as to government regulations concerning health care claims with the government. If you find from the evidence that there was a failure of the defendant to comply with the various administrative regulations, this is not automatically an act of health care fraud. The defendant must act with intent to defraud.

Another instruction informed the jury that to convict Choiniere, the government needed to prove both that there was a scheme to defraud and that Choiniere participated in the scheme knowingly and with intent to defraud. The instruction further defined "intent to defraud" to mean "that the acts charged were done knowingly with the intent to deceive or cheat the victims in order to cause a gain of money or property to the defendant." These two instructions conveyed to the jury Choiniere's theory that he acted without the intent to defraud. If the jury had believed Choiniere's testimony that he had consulted applicable regulations and materials and attempted in good faith to comply with them, the instructions the jury received informed it that acquittal was proper. *See James*, 464 F.3d at 707 ("[T]his theory of defense was intrinsically part of the charge and the failure to provide these instructions did not deny [the defendant] a fair

trial."); *United States v. Schwartz*, 787 F.2d 257, 265 (7th Cir. 1986) (finding district court did not err in refusing to give instruction that stated a theory of defense already embodied in different language in other jury instructions).

Finally, the failure to give this instruction to the jury did not deny Choiniere a fair trial. The district court properly instructed the jury on each of the elements necessary to convict Choiniere of the charges presented to the jury. The district court also allowed Choiniere to introduce the OIG bulletin as an exhibit at trial. In addition, when the district court rejected Choiniere's proposed instruction no. 9 at the jury instruction conference, it also explicitly told the defense that arguments could be made concerning the inexpensive gift regulations during closing argument. And the defense did so. Soon after pointing to instruction no. 25, Choiniere's counsel argued that providing food and pillows did not violate Medicare regulations. He also referenced the bulletin exhibit and argued that Choiniere had not acted with the intent to defraud because he had read that gifts of no more than $10 individually or $50 in the aggregate were exempted. *See United States v. White*, 472 F.3d 458, 462 (7th Cir. 2006) (finding the defendant was not denied a fair trial in part because the district court allowed the defendant to argue his theory of defense to the jury). We also note that whether Choiniere offered patients things of value was a minor issue, at best, during the trial. Instead, the trial focused on the government's allegation that Choiniere fraudulently billed for hundreds of back belts, and the government's evidence of coding fraud was overwhelming. The district court committed no error when it declined to give proposed instruction no. 9.

2. Choiniere's Proposed Instruction No. 10

Choiniere also maintains the district court incorrectly refused to give his proposed instruction no. 10. This instruction read:

> Although it is a violation of law for any person to offer or to knowingly and willfully offer or pay any remuneration to induce a person to refer a person for the furnishing of any item for which payment may be made under a federal health care program, this prohibition does not apply to any amount paid by an employer to an employee.

Choiniere maintains that the jury should have received this instruction because it heard testimony that he paid commissions, based on the number of belts sold, to persons who helped him sell the belt. In addition, he points out that the government asserted in its opening statement that it was wrong to solicit patients "[b]ecause you want people to get the healthcare they need . . . not on the basis of whether or not they feel obligated because they took a free Subway sandwich or got a massage from a therapist who was paid on commission if they got a brace. That, too, was unethical and a fraud." Neither party mentioned the commission payments in its closing argument.

As with proposed instruction no. 9, we conclude that the district court did not err when it declined to give proposed instruction no. 10. First, although the instruction is a correct statement of law, it is not a statement of law that is relevant in this case. The United States Code provides that it is generally a felony to

> knowingly and willfully solicit[ ] or receive[ ] any remuneration (including any kickback, bribe, or

rebate) directly or indirectly, overtly or covertly, in cash or in kind—

(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.

42 U.S.C. § 1320a-7b(b)(1)(A). As the proposed instruction conveys, no crime occurs, however, when "any amount [is] paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services." 42 U.S.C. § 1320a-7b(b)(3)(B).

The indictment in this case, however, did not charge Choiniere with making improper payments to persons who helped him sell the belt, nor did it make any mention of these payments. As in *White*, 472 F.3d at 462, then, the jury instruction, "even if it were construed as a theory, does not reflect a theory that has any evidentiary support because it is entirely non-responsive to the conduct that was alleged in the indictment."

Furthermore, as was the case with proposed instruction no. 9, the instructions the jury received embodied the theory of defense Choiniere sought to have the jury consider through his proposed instruction no. 10. Simply paying remuneration to employees for referrals was insufficient to convict him of health care billing fraud, money laundering, and fraudulent concealment of overpayment of health care benefits. But the instructions the jury received, and in particular, instruction no. 25, discussed above, made clear that convictions required the

jury to find that Choiniere had acted with the intent to defraud. The district court's decision not to give Choiniere's proposed instruction no. 10 was also not erroneous.

### B. Sentencing Enhancement for Using Minors

Finally, Choiniere argues that the district court erred when it enhanced his sentence for using minors to further his fraud scheme. We review findings of fact and applications of the United States Sentencing Guidelines for clear error. *United States v. Stitman*, 472 F.3d 983, 986 (7th Cir. 2007).

Section 3B1.4 of the Guidelines provides that "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels." Application Note 1 to this provision states that " '[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." To warrant this enhancement, the defendant must have personally committed some affirmative act. *United States v. Acosta*, 474 F.3d 999, 1003 (7th Cir. 2007).

The district court enhanced Choiniere's sentence after finding that he asked two minors to pass out fliers advertising his clinic. As an initial matter, a minor need not know that an activity is illegal for the enhancement to apply. *United States v. Shearer*, 479 F.3d 478, 483 (7th Cir. 2007). Rather, the enhancement "focuses on whether the defendant used a minor in the commission of the crime, not whether the minor knew that he was being used to commit

a crime." *United States v. Ramsey*, 237 F.3d 853, 861 (7th Cir. 2001).

At trial, there was conflicting testimony as to whether minors passed out fliers advertising one of Choiniere's clinics under his direction. Amy Mellott, the mother of the two minors in question, testified that Choiniere offered her children movie tickets in exchange for their agreement to pass out fliers advertising his clinic. Sandra Marshall, the minors' grandmother, also said that the minors had been offered movie tickets in return for handing out the fliers. Choiniere and Pasman, however, testified they had not offered any movie tickets to the children in return for passing out the fliers. This conflict in testimony was a classic credibility determination for the district court to resolve, and it was entitled to credit the testimony from Mellott and Marshall as it did. *See United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005).

Finally, Choiniere argues that there was no evidence that criminal acts took place at the Waterfalls Apartment clinic for which the children had distributed fliers. Multiple witnesses, however, testified that they lived at the complex, attended one of Choiniere's "back pain relief" clinics there, and gave their insurance information after Choiniere dispensed a back belt to them. Documents submitted at trial also showed that Choiniere fraudulently billed for the belts dispensed at Waterfalls Apartments. As a result, the district court's decision to enhance Choiniere's sentence two levels for the use of minors to promote his scheme was not clearly erroneous.

## III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.