NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2019
Decided February 11, 2019

**Before**

WILLIAM J. BAUER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1011

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1:17CR00024-001 |
| JAMES D. VICTERY, *Defendant-Appellant*. | Michael J. Reagan, *Chief Judge*. |

**O R D E R**

A jury found James Victery guilty of two counts of wire fraud, 18 U.S.C. § 1343, and two counts of money laundering, 18 U.S.C. § 1957, for perpetrating a scheme to defraud the United States Air Force and its contractors. He was sentenced to 48 months' imprisonment, below the Sentencing Guidelines range of 51–63 months, and three years' supervised release. He filed a notice of appeal, but his appointed counsel asserts that the appeal is frivolous and moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967). Victery opposes counsel's motion. See CIR. R. 51(b). Counsel's brief explains the nature of the case and addresses potential issues that this kind of appeal might involve. Because the analysis in counsel's brief appears thorough, we limit our review

to the subjects he discusses and those that Victery raises. See *United States v. Bey*, 748 F.3d 774, 776 (7th Cir. 2014).

At trial, the government submitted evidence that Victery owned and operated a business known as TEAM, a bonding and escrow company that served as a liaison between the Air Force and various small contractors. Through TEAM, Victery facilitated the sale of contractor invoices to financing companies including FedSTAR, the victim in this case, for a percentage of their face value. This process is referred to as "factoring" an invoice, and it is often utilized in government contracts to ensure that the contractors receive payment for their work sooner. As part of his scheme, Victery fabricated two invoices, forged the purported contractors' signatures and the Air Force contracting officer's on a factoring agreement, and sold them to FedSTAR, which paid him almost $590,000 that he then used for his own business expenses. He also purported to supply surety bonds for two small contractors who lost their Air Force contracts when it was revealed that the bonds were false. To win FedSTAR's trust, Victery falsely represented that he was a graduate of the Air Force Academy, established a business called "Old National" that FedSTAR would believe was affiliated with Old National Bank, and used social media to create a fake profile for his fictitious business associate.

Counsel concludes that it would be frivolous for Victery to challenge his conviction. Because a jury found Victery guilty, we would review the evidence in the light most favorable to the government. See *United States v. Maldonado*, 893 F.3d 480, 484 (7th Cir. 2018). To establish wire fraud, the government needed to show that Victery was involved in a scheme to defraud, had the intent to defraud, and used the wires in furtherance of that scheme. See *United States v. Johnson*, 874 F.3d 990, 998–1000 (7th Cir. 2017). As mentioned above, the government offered evidence that demonstrated that Victery created fraudulent invoices; engaged in acts meant to trick the victim; defrauded FedSTAR of over $500,000; and caused the wire transmissions that transferred money from FedSTAR to his company.

Additionally, to prove money laundering, the government needed to show that Victery knowingly disbursed the illicit proceeds in a manner to conceal the fraud. See *United States v. Stewart*, 902 F.3d 664, 682 (7th Cir. 2018). The evidence showed that Victery attempted to legitimize the ill-gotten proceeds by using them to provide a loan from TEAM to another business. Thus, it would be pointless to contend that no rational jury could find Victery guilty of wire fraud and money laundering.

Likewise, any challenge to the jury instructions would be doomed to fail. Victery did not object to the instructions, so we would review them only for plain error, see *United States v. Natale*, 719 F.3d 719, 729 (7th Cir. 2013). But, like counsel, we do not see any obvious and prejudicial mistake in the instructions. Further, it does not appear that the district court abused its discretion when ruling on evidentiary challenges, and no other trial errors stand out from the record.

Though he explores whether Victery could challenge his sentence, counsel correctly concludes that any such argument would be frivolous. The district court correctly calculated Victery's 51- to 63-month guidelines range based on his criminal history category of I and total offense level of 24. The court reached that offense level based on Victery's intent to cause over $550,000 in loss, U.S.S.G. § 2B1.1(b)(1), his use of sophisticated means (including creating a Facebook profile for the non-existent vice president of Victery's non-existent bank), *id.* § 2B1.1(b)(10)(c), and his conviction for money laundering under 18 U.S.C. § 1957, U.S.S.G. § 2S1.1(b)(2)(A). The court thoroughly explained its sentence based on Victery's age, lack of prior criminality, and the sophistication involved in the offense.

Victery received the 2-level sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(c). But counsel concludes that, although the district judge said that Victery's offense "might be a rather sophisticated scheme, [but] not to the point that it received any additional points," it would be frivolous to argue that this "misstatement" was reversible error. We agree. Based on the facts that the government offered at trial, the sophisticated-means enhancement, which was recommended in the presentence investigation report, easily applied to Victery's scheme. See U.S.S.G. § 2B1.1, cmt. 9(B). Victery did not object to the PSR's guidelines calculation, and the judge adopted the PSR in full. Therefore, we agree with counsel that the judge's misstatement did not affect the sentence, and any argument otherwise would be frivolous.

In his response brief, Victery argues that he could make a nonfrivolous argument that the district court's loss calculation—to which he did not object—was wrong because it failed to account for money recouped by FedSTAR. But, as counsel correctly recognizes, no money was returned "by the defendant or other persons acting jointly with the defendant," and not "before the [fraud] was detected." See U.S.S.G. § 2B1.1 cmt. n.3(E)(i). It would, therefore, be frivolous to contend that Victery was entitled to an offset in the loss amount, although the money returned to the victim was appropriately deducted from the restitution obligation.

Counsel next explores whether it would be frivolous to argue that the district court erred in denying Victery's pretrial motion to substitute his appointed counsel. When reviewing the denial of such a request, we analyze whether it was timely, whether the district court adequately inquired into the matter, and whether the asserted breakdown between counsel and defendant "was so great as to result in a total lack of communication, precluding an adequate defense." *United States v. Ryals*, 512 F.3d 416, 419 (7th Cir. 2008).

Victery moved to substitute counsel three days before trial was to begin, and the judge immediately held a hearing at which he investigated Victery's allegation of a breakdown with his attorney; so the first two factors would work against Victery. In regard to the third, Victery claimed that his attorney was disclosing confidential information to third parties and that he no longer trusted him. If true, as counsel on appeal posits, that could constitute an ethical violation, and Victery could make a nonfrivolous argument that the district court abused its discretion. But after considering what both Victery and his attorney had to say at the hearing, the judge did not believe that Victery's appointed attorney was acting inappropriately. Rather, the judge credited the attorney's contention that he was reaching out to potential witnesses and enlisting Victery's son to persuade Victery to be more cooperative. On the other hand, the judge found that it was Victery who apparently refused, unreasonably, to interact with counsel despite counsel's attempts to communicate.

Given the district court's findings, we agree that it would be frivolous to argue that it abused its discretion when denying Victery's last-minute motion to substitute counsel. See *United States v. Thomas*, 833 F.3d 785, 792 (7th Cir. 2016). Despite the breakdown, Victery's appointed counsel was still responding to Victery's questions about defense strategies, documents, and witnesses that Victery thought important to his case. But counsel found them to be irrelevant or damaging, and arguments over trial strategy do not constitute grounds for substitution of counsel. See *United States v. Volpentesta*, 727 F.3d 666, 673–74 (7th Cir. 2013).

Counsel next questions whether Victery could make a nonfrivolous argument that his appointed attorney was ineffective. But we agree with counsel that Victery should pursue any claim of ineffective assistance through a motion under 28 U.S.C. § 2255, so that a record can be made. See *Massaro v. United States*, 538 U.S. 500, 504–06 (2003); *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014) ("[I]t is imprudent to present an ineffective-assistance argument on direct appeal.").

Accordingly, we GRANT counsel's motion to withdraw and DISMISS Victery's appeal.